UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUNICE RAQUEL FLORES THOMAS, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>       Plaintiff,<br>– against –<br><br>AAM HOLDING CORP. d/b/a FLASHDANCERS GENTLEMEN'S CLUB, and 59 MURREY STREET ENTERPRISES, INC. d/b/a FLASHDANCERS GENTLEMEN'S CLUB, and BARRY LIPSITZ, individually, and BARRY LIPSITZ, JR., individually,<br><br>       Defendants. | Case No. 22-CV-3110 |

**JOINT MEMORANDUM IN SUPPORT OF MOTION FOR SETTLEMENT APPROVAL**

**I. PRELIMINARY STATEMENT**

Plaintiff Eunice Raquel Flores-Thomas ("Plaintiff") and Defendants seek approval of the terms of the settlement agreement (the "Agreement") made between Plaintiff and Defendants. The Agreement is applicable only to the Plaintiff and Defendants, not to any opt-in plaintiffs, as their cases are still pending. The Agreement resolves each of Plaintiff's claims asserted against Defendants in this action, including claims under the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a), the minimum wage provisions of the New York Labor Law ("NYLL") § 652(1), as well as additional claims under NYLL § 195(1 & 3), § 193(2), and § 196-d. A copy of the Agreement is submitted herewith as Exhibit 1 for the Court's review and approval. The Parties, who engaged in an arm's-length, good faith negotiation, reached a fair and reasonable settlement that provides Plaintiff with a substantial recovery of her claimed

1

damages under applicable law. Accordingly, the Parties respectfully request that the Court approve the Agreement as submitted and dismiss this action with prejudice.

## II. PLAINTIFF'S ALLEGATIONS AND DEFENDANTS' RESPONSE

On April 14th, 2022, Plaintiff filed a wage-and-hour lawsuit against Defendants alleging FLSA and NYLL violations. Plaintiff contends that throughout Plaintiff's employment from in or around September 2019 through in or around the end of July 2021: (i) Defendants willfully failed to pay Plaintiff the minimum wages lawfully due to her under the FLSA and NYLL; (ii) Defendants violated the NYLL by failing to provide Plaintiff with any wage notice upon her hire; (iii) Defendants violated the NYLL by failing to provide Plaintiff accurate wage statements on each payday; (iv) Defendants violated the NYLL by requiring Plaintiff to pay Defendants a "house fee" for every shift that she worked, as well as for any shift that Plaintiff was unable to work due to health or personal matters; and (v) Defendants violated the NYLL by taking a percentage of Plaintiff's earned tips that Defendants' customers left for Plaintiff on credit cards and/or by using dance dollars.

Defendants' argument is that Plaintiff was properly classified and treated as a commissioned salesperson employee, subject to the terms of her Commissioned Salesperson Agreement ("CSA"). Contrary to Plaintiff's allegations, Defendants did not take Plaintiff's tips, did not make Plaintiff pay to work, and did not improperly deduct any amount from Plaintiff's wages and/or tips. Plaintiff was paid from established Performance Fees, which are non-discretionary fees for the sale of services offered by the Defendants that satisfy the Defendants' wage obligations. All money earned for the Defendants' sales of dances and time spent in private rooms belongs to the Defendants, any portion of which the Defendants may pay to dancers in the form of commissions to satisfy any and all wage obligations.

As noted above, the Parties do not agree with each other on the merits of Plaintiff's allegations. There is thus a *bona fide* dispute between the Parties regarding Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' good-faith effort to resolve this *bona fide* dispute in an amicable fashion through arm's length bargaining.

### III. THE SETTLEMENT IS OBJECTIVELY FAIR, ADEQUATE AND REASONABLE

As the Court is aware, when FLSA claims are settled, the Court must review and scrutinize the proposed agreement to ensure fairness. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

The Second Circuit's ruling in *Cheeks* identified certain red-flag issues to take note of within a settlement, such as confidentiality, general releases and counsel fees exceeding 40%. *Cheeks*, 796 F.3d at 206*.* This agreement contains no such red-flags: (i) the release contained in the agreement is not overbroad; (ii) there is no requirement for confidentiality; and (iii) attorneys' fees are less than the contracted forty percent of the settlement amount.

Furthermore, an FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., 11-cv–00529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Exec. Club Comp. Litig*., No. 10 CIV. 1145 KMW, 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement

reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the *bona fide* dispute between the Parties. This is because the Agreement: (1) fairly accounts for Plaintiff's possible recovery; (2) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses; (3) accounts for the risks in proceeding with the litigation; and (4) is the product of arm's-length bargaining between the Parties which was completely devoid of any semblance of fraud or collusion. *See generally Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

**a)    The Agreement Fairly Accounts for Plaintiff's Possible Recovery**

Pursuant to the terms of the Parties' Agreement, Defendants are paying the total sum of $47,500.00, of which $27,518.42 will go directly to the Plaintiff. Clearly, it cannot be said that the Agreement constitutes "a mere waiver of statutory rights brought about by an employer's overreaching." To the contrary, the Agreement only resolves the *bona fide* dispute between the Parties relating to the payment of Plaintiff's wages and the other claims raised in the Complaint. The Agreement does not contain a confidentiality provision, and its release is strictly limited to any and all wage and hour claims. The Agreement does have a non-disparagement clause, but there is a carve out for truthful statements about Plaintiff's experience litigating the Lawsuit. *See Payano v. 1652 Popham Assoc., LLC,* No. 17-CV-9983 (HBP), 2019 WL 464231, at 4 (S.D.N.Y. Feb. 6, 2019). The Agreement also contains reasonable no admission and forfeiture clauses. Judges in this

District have found settlement agreements containing these types of provisions to be fair and reasonable and approved the agreements. *See, e.g.,* Order, *Rodriguez v. Mount Sinai Morningside*, No. 21-CV-01386 (RWL) (S.D.N.Y. July 13, 2022), ECF No. 50; *see also* Order, *Perez v. Hummus On 6th LLC,* No. 20-CV-05705 (SDA) (S.D.N.Y. June 15, 2021), ECF No. 32.

**b)   The Risk and Expenses Faced by the Parties**

Defendants completely deny any wages are owed to the Plaintiff and assert that full and appropriate wages were paid for all hours worked. Thus, the range of possible recovery varies greatly and could be zero. Plaintiff alleges that she is entitled to back wages of approximately $48,971.43 and that if she recovered in full for her claims, exclusive of attorney's fees, she would be entitled to approximately $125,657.10.  A copy of Plaintiff's damages chart, breaking down each amount sought from Defendants, is attached as Exhibit 2.  However, there is an inherent risk in going to trial of being unable to establish any liability. Plaintiff is satisfied with the amount of $47,500.00, while eliminating the risks of trial.

The Parties in this matter face substantial risks in proceeding forward in this litigation. Defendants are confident that they could prevail at trial on their defenses. Additionally, and as noted *supra*, if Defendants do so prevail, Plaintiff faces the possibility of receiving no recovery at all. Further, Plaintiff faces the prospect of waiting months for the matter to proceed through motion practice and an arbitration hearing.

Conversely, while Defendants are confident that they would be able to severely undermine, if not defeat, Plaintiff's claims, they are also mindful that this would have only occurred after a protracted litigation at significant financial defense costs. Conversely, if Plaintiff prevails at trial, Defendants could face significant liability for unpaid wages, liquidated damages, interest, and attorneys' fees. Thus, the costs of litigation and prospects of liability for the Defendants clearly weigh in favor of early resolution. Accordingly, all Parties face substantial risks in proceeding

5

forward with the litigation. As well, even though it is not necessarily a factor under *Wolinsky,* the Court should also not lose sight of the fact that litigation imposes a mental toll upon both Plaintiff and the Defendants no matter who wins or loses. *See Brown v. TD Bank, N.A.,* No. 15-CV-5474, 2016 WL 1298973, at *7 (E.D. Pa. Apr. 4, 2016) ("Litigation is expensive, time-consuming, and emotionally draining."). Settlement ameliorates this burden too.

c) **The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion**

The settlement is the result of arms-length negotiations between experienced counsel. All Parties are represented by counsel highly experienced in this field. I have more than 25 years of experience in Employment law. My practice focuses on employment law on behalf of employers, with an emphasis on wage and hour and employment discrimination cases, and I have successfully prosecuted and defended scores of FLSA actions. Likewise, Plaintiff's counsel, Sharan R. Abraham, has three years of experience in Employment law, additionally, all work on this case, starting before the complaint was filed, was supervised by firm-partners Michael J. Borrelli and/or Alexander T. Coleman, who have over 22 years and 14 years of experience litigating employment law cases, respectively. Plaintiff's counsel's practice focuses on employment law on behalf of employees, with an emphasis on wage and hour cases, and it has successfully prosecuted and settled scores of FLSA and NYLL individual and class/collective actions.

In addition, it cannot be disputed that the Agreement was the product of legitimate bargaining which was devoid of any semblance of fraud or collusion. In fact, the agreement contains clauses that indicate the Parties warrant that the agreement was executed under no duress. Far from the product of fraud or collusion, the Agreement constitutes an effort by the Parties to resolve the dispute under the best possible circumstances. Accordingly, the Agreement should be approved by the Court.

## IV. THE COSTS AND ATTORNEYS' FEES ARE FAIR AND REASONABLE

Pursuant to the terms of the Parties' Agreement, Defendants are paying the total sum of $47,500.00, with $19,981.58 to be paid in attorneys' fees and costs. Plaintiff's counsel incurred costs of $4,148.25 in reimbursable expenses, which includes, but is not limited to, mediation costs, Court filing fees, and arbitration filing fees.[1] Plaintiff's counsel's fees, without including expenses, are approximately one-third of the overall settlement. Plaintiff agreed, upon retaining counsel, to pay 40% of the settlement as a counsel fee.[2]

The legal fee awarded is less than the lodestar calculation of counsel fees, which is $84,432.50. Timesheets for Plaintiffs' counsel are attached as Exhibit 3. The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. Further, my firm has received a similar percentage in many EDNY and SDNY cases such as *Argudo v. Rugo, LLC et al.*, Case No. 1:21-cv-05511-GHW; *Ramirez, et al. v. 1701 Pizza Ltd. d/b/a Luigi's Pizza, et al.*, Case No. 1:21-cv-00792-ALC-SDA; *Villalta et al. v. Advanced MEPF Services Corp. et al.*, Case No. 1:19-cv-05014-TAM; *Hobson et al. v. Manage Transit Corp. et al.*, Case No. 1:19-cv-02695-LB; *Sullivan et al. v. 10 Washington Ave. Food, Inc. et al.*, Case No. 2:19-cv-00245-AKT; and *Belliard et al. v. Koryeo Int'l Corp. et al.*, Case No. 14-cv-03495-ENV-ST.

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.

---

[1] Plaintiff's counsel represents Plaintiff in two separate cases, and Plaintiff chooses to use this settlement to cover reimbursable expenses incurred to date in both cases.

[2] While Plaintiffs' counsel's retainer sets forth and permits it to request approval of a maximum fee of 40%, Plaintiffs' counsel seeks only one-third of the net settlement after deducting counsel's out-of-pocket litigation expenses.

2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of July 15, 2024, Plaintiffs' counsel has billed 408.50 hours in total on this matter - - an adversarial case as detailed herein - - amounting to $84,432.50 in fees, an amount in excess of counsel's attorneys' fees requested herein. This figure is based on hourly rates of: $500.00 per hour for Michael J. Borrelli, Esq., Plaintiffs' counsel's firm's managing partner; $450.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised associate work in this case; $250.00 per hour for Sharan R. Abraham, a senior associate with three years of experience in employment litigation; $250.00 per hour for Danielle Petretta, a former senior associate; $200.00 per hour for other associates working on the matter; and $90.00 for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt,* 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); *Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh*, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y Sept. 30, 2021). Biographical information for each of the attorneys who performed work on this case is attached hereto as Exhibit 4.

While some courts may require that a judge assess the reasonableness of the fee award, *see Wolinsky v. Scholastic*, Inc., 900 F. Supp.2d 332, 336 (S.D.N.Y. 2012), others defer to the contract between the plaintiff and his or her counsel. *Mares v. Kim*, No. 15 CIV. 7197 HBP, 2016 WL 4098408, at *2 (S.D.N.Y. July 25, 2016) (internal citations omitted) ("[T]he purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee for overreaching by the employer . . . . I do not understand the FLSA to regulate the relationship

between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). The latter view was espoused by the United States Supreme Court in *Venegas v. Mitchell*, 495 U.S. 82 (1990), where the Court construed 42 U.S.C. § 1988 and held that the fee-shifting statute:

> controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. [The statute] itself does not interfere with the enforceability of a contingent-fee contract.

*Mitchell*, 495 U.S. at 90. Similarly, in *Cheeks*, the Second Circuit Court of Appeals noted that the duty to pay wages falls upon the employer -- not the employee's counsel who labored for an agreed-upon fee. In *Cheeks*, the Second Circuit expressly noted "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207. *Cheeks* only requires a court to review "adequate documentation" of the fee, which is submitted herein, and a review of the settlement amount that the employer is paying to the employees. *Id*. at 206. *Cheeks* is in full accord with *Mitchell*, where the Supreme Court limited its view to what the "losing defendant must pay," and approved the plaintiff's counsel's fee based upon the private contract between the Parties, without intruding into the relationship between plaintiff and counsel. *See Mitchell*, 495 U.S. at 89.

A one-third contingency fee is "commonly accepted in the Second Circuit in FLSA cases." *Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 NGG MDG, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases). However, contingency fees of up to 40% have been accepted by courts in this Circuit. *See e.g., Michel v Parts Auth., Inc*., 15CV5730ARRCLP, 2019 WL 13225307 (E.D.N.Y. Aug. 26, 2019). According to the Second Circuit, "[e]ven if helpful,

however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award." *Id*. Thus, the attorneys' fees to Plaintiff's counsel of one-third are reasonable and should not a barrier to settlement approval.

## V.   CONCLUSION

In view of the foregoing, the Parties respectfully request jointly that the Court approve the Parties' Agreement and dismiss this case with prejudice.

Dated: New York, New York
August 30, 2024

Respectfully submitted,

Akerman LLP

/s/Jeffrey A. Kimmel
By: Jeffrey Kimmel, Esq.
    M. Adil Yaqoob Esq.
*Attorneys for Defendants*
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel: 212.880-3800
Jeffrey.kimmel@akerman.com

Borrelli & Associates P.L.L.C.

/s/Sharan R. Abraham
Sharan R. Abraham, Esq.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 205
Garden City, New York 11530
Tel: 516. 248-5550
SRA@employmentlawyernewyork.com