UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUNICE RAQUEL FLORES THOMAS, on behalf of herself, individually, and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br>     -v-<br><br>AAM HOLDING CORP. doing business as FLASHDANCERS GENTLEMEN'S CLUB, et al.,<br><br>                              Defendants. | CIVIL ACTION NO.: 22 Civ. 3110 (GHW) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

The parties in this wage-and-hour case under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), submitted a joint motion seeking approval of their settlement agreement (ECF No. 58-1 (the "Agreement")) under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).[1] (ECF No. 57 ("Motion")). The parties consented to my jurisdiction under 28 U.S.C. § 636(c) for the purpose of deciding the Motion, and the Honorable Gregory H. Woods referred the Motion for disposition. (ECF Nos. 61; 62).

For the reasons that follow, the Motion is granted, and the Agreement is approved as fair and reasonable.

## II. BACKGROUND

### A. Factual Background

Plaintiff Eunice Raquel Flores Thomas alleged that, from September 2019 to July 2021, she was a dancer at a gentlemen's club owned and operated by Defendants AAM Holding Corp.,

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

doing business as Flashdancers Gentlemen's Club ("AAM"), and 59 Murrey Street Enterprises, Inc., doing business as Flashdancers Gentlemen's Club ("Murray"), Barry Lipsitz, and Barry Lipsitz, Jr. (collectively, "Defendants"). (ECF No. 1 (the "Complaint") ¶¶ 1–2, 11–16, 32–34). Plaintiff alleged that she worked for Defendants 28 hours per week, and Defendants paid her "a portion of her earned gratuities on a daily basis[,]" but they did not pay her any wages required under the FLSA and New York Labor Law § 650 et seq. ("NYLL"). (Id. ¶¶ 1–8, 35–44). Plaintiff also alleged that Defendants failed to provide her with adequate wage statements and wage notices, as required by NYLL §§ 191 and 195; obligated her to pay a $60.00 "house fee" ($200 if a shift started after 9:00 p.m.) when she needed to miss a scheduled shift for "a personal or health reason"; and kept approximately two percent of Plaintiff's tips earned on credit card or "funny money" transactions ("fake money issued to customers who only had a credit card but wanted to give a dancer physical tips"). (Id. ¶¶ 3–5, 37–41).

B. **Procedural Background**

On April 14, 2022, Plaintiff filed the Complaint, and Defendants waived service a few days later. (ECF Nos. 9–12). Judge Woods referred the case for general pretrial supervision and reports and recommendations on dispositive motions, as needed. (ECF No. 8). On May 10, 2022, the parties filed a letter motion and joint stipulation stating they previously agreed to arbitrate Plaintiff's claims and seeking a stay pending arbitration. (ECF No. 14). On May 11, 2022, the Court granted the parties' request and stayed the case pending arbitration. (ECF Nos. 16, 17). The parties submitted several status reports informing the Court of their progress in arbitration and eventually reported that they reached a settlement. (ECF Nos. 20, 22, 24, 26, 28, 30, 32, 38, 39, 41, 45, 50, 52). In August 2024, the Court granted Plaintiff leave to move to lift the stay of

2

proceedings, and Plaintiff's opposed motion to do so is currently pending. (ECF Nos. 54–56). On August 30, 2024, the parties filed the Motion and then consented to my jurisdiction to decide it. (ECF Nos. 57; 61; 62).

### III. DISCUSSION

#### A. Legal Standard

Under Federal Rule of Civil Procedure 41(a)(1)(A), parties may voluntarily dismiss an action in federal court, subject to the limitations imposed by "any applicable federal statute[.]" Fed. R. Civ. P. 41(a)(1)(A); see Amhaz v. Booking.com (USA) Inc., No. 17 Civ. 2120 (GBD) (OTW), 2019 WL 9122944, at *2 (S.D.N.Y. Oct. 29, 2019), adopted by, 2020 WL 3498264 (S.D.N.Y. June 29, 2020). "In light of the unique policy considerations underlying the FLSA," the statute falls within Rule 41(a)(1)(A) and, therefore, "stipulated dismissals settling FLSA claims with prejudice require approval of the district court or the [Department of Labor] to take effect." Cheeks, 796 F.3d at 206.

Following precedent in this District, courts approve FLSA settlements where they are "fair and reasonable," an inquiry that "employ[s] the five non-exhaustive factors enumerated in Wolinsky v. Scholastic Inc.[,]" 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Amhaz, 2019 WL 9122944, at *2. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky, 900 F. Supp. 2d at 335.

3

B. **Application**

1. **Range of Recovery, Burdens, and Litigation Risks**

The first three Wolinsky factors are interrelated and can be considered together. See, e.g., Flores v. Dynamic Wireless NYC, LLC, No. 21 Civ. 6160 (OTW), 2022 WL 3363584, at *2 (S.D.N.Y. July 1, 2022); Amhaz, 2019 WL 9122944, at *2. Under the Agreement, the total amount Defendants are to pay is $47,500.00 (the "Settlement Amount"), of which Plaintiff will receive two checks of $13,759.21 each (for a total of $27,518.42): one to resolve her wage and hour damages and the other to resolve "liquidated damages, statutory penalties, and interest due and owing under the FLSA and NYLL[.]" (ECF No. 58-1 at 2–3). Defendants are to pay the remaining $19,981.58 to Plaintiff's counsel, Borrelli & Associates, P.L.L.C., for attorneys' fees and costs. (Id. at 2).

Although Defendants deny that they owe Plaintiff any wages and contend they paid her all wages owed for her hours worked, Plaintiff estimated that she is entitled to $48,971.43 in back wages and, were she successful on her FLSA and NYLL claims, she would have been entitled to a total damages award of $125,657.10, exclusive of attorneys' fees. (ECF No. 58 at 5). In addition, Defendants acknowledge that litigation of the case through trial could potentially result in "significant liability for unpaid wages, liquidated damages, interest, and attorneys' fees[,]" even though they argue they "would be able to severely undermine, if not defeat, Plaintiff's claims after "protracted litigation at significant financial defense cost." (Id.) Plaintiff's total recovery represents just under 38% of her best-case FLSA and NYLL damages estimate. Thus, the amount Plaintiff will receive under the Agreement, relative to her estimated damages, is within the range that other courts in this District have deemed fair and reasonable recoveries in wage-

4

and-hour actions. See, e.g., Flores, 2022 WL 3363584, at *2 (approving settlement that resulted in plaintiff's receipt of "nearly 50% of her best-case" damages estimate, "not including any liquidated damages or penalties"); Amhaz, 2019 WL 9122944, at *2 (approving settlement percentages between 9.4% and 26% of plaintiffs' estimated total recoveries); Beckert v. Ronirubinov, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving settlement that resulted in plaintiffs' receipt of 25% of estimated damages).

Plaintiff also acknowledged that she is "satisfied with the amount of $47,500.00, while eliminating the risks of trial[,]" and avoiding the possibility of receiving no recovery at all or "waiting months for the matter to proceed through motion practice and an arbitration hearing." (ECF No. 58 at 5). Accordingly, Plaintiff's recovery under the Agreement, combined with the risks the parties may face in further litigation, support the finding that the Agreement is fair and reasonable.

### 2. Arm's-Length Negotiations

The Agreement is the result of good faith negotiations facilitated by experienced counsel. (ECF Nos. 58 at 6; 58-4). The Agreement is therefore the result of arm's-length negotiations. See Warren v. Aba Noub, Ltd., No. 21 Civ. 365 (SHS), 2021 WL 1841685, at *1 (S.D.N.Y. May 7, 2021) (finding that settlement was result of arm's-length negotiation between experienced counsel where parties jointly stated the same); Puebla v. NY Zerza Corp., No. 22 Civ. 6820 (DEH), 2024 WL 4042121, at *2 (S.D.N.Y. Sept. 4, 2024) (same).

### 3. Risk of Fraud or Collusion

There is nothing in the record indicating that fraud or collusion played a role in the Agreement. See Flores, 2022 WL 3363584, at *2; Amhaz, 2019 WL 9122944, at *3. In addition,

Plaintiff no longer worked for Defendants at the time she filed the Complaint (ECF No. 1 ¶ 34), "diminishing potential concern that [she] may have been coerced into the [Agreement] by [her] employer." Amhaz, 2019 WL 9122944, at *3.

### 4. Agreement Provisions

The Agreement contains a non-disparagement clause, a release, and an agreement not "contact the press or general media, or utilize any social media to disseminate information, regarding [Plaintiff's] individual claims in" this case ("Publicity Provision"). (ECF No. 58-1 at 4–5).

Non-disparagement clauses can contravene the purpose of the FLSA. See Martinez v. Gulluoglu LLC, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016). The non-disparagement clause here, however, does not restrict Plaintiff from discussing or disclosing the facts of this case or making "truthful statements" about Plaintiff's "experience litigating" this case, and is not one-sided because it applies to Plaintiff and Defendants Barry Lipsitz and Barry Lipsitz, Jr. It also contains sufficient carve-outs so that the provision will not undermine settlement approval. See Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015) ("[N]ot every non-disparagement clause in an FLSA settlement is per se objectionable. As consideration for a settlement payment, plaintiffs may contract away their right to say things that are insulting or calumnious about the defendants. But . . . [the non-disparagement clause] must include a carve-out for truthful statements about plaintiffs' experience litigating their case."); accord Lopez v. Ploy Dee, Inc., No. 15 Civ. 647 (AJN), 2016 WL 1626631, at *3 (S.D.N.Y. April 21, 2016) (rejecting non-disparagement clause that lacked carve-out for truthful statements); cf. Cortes v. New Creators, Inc., No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4

6

(approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

On the release provision, a "number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." Lazaro-Garcia v. Sengupta Food Servs., No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (collecting cases). Judicial disfavor of broad releases is especially pronounced where "the releases were not mutual and protected only the defendants." Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). The release provision here applies only to wage and hour claims Plaintiff, either individually or as member of a class or collective, did or could have brought in this case and does not apply to "any wage and hour claim or action against" Defendants that may arise after the effective date of the Agreement. (ECF No. 58-1 at 4). Although the Complaint alleged the existence of a class, the release binds only Plaintiff, no other employees, as to acts relating to a wage-and-hour dispute between the parties that predate the effective date of the Agreement. Accordingly, the release provision will not preclude approval of the Agreement here. See Lazaro-Garcia, 2015 WL 9162701, at *2 ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action.").

The Publicity Provision restricts Plaintiff from "contact[ing] the press or general media, or utiliz[ing] any social media to disseminate information, regarding [Plaintiff's] individual claims in" this case.[2] (ECF No. 58-1 at 4). If she were to post or publish "any content on any social media

---

[2] The Agreement defines "press or general media" as "newspapers, periodicals, magazines, online publications, and television and radio stations and programs, and any representative of the foregoing." (ECF No. 58-1 at 4–5). "[S]ocial media" refers to "Facebook, Twitter, Instagram,

7

account that she owns, operates, or controls[,]" Defendants must notify Plaintiff's counsel to remove the content within five days or suffer breach of the Agreement. (Id. at 5). Although the Publicity Provision may appear overbroad on first read, it "does not apply to truthful statements made by [Plaintiff] to any third party," even though Plaintiff may not "make statements about [Defendants] that she knows are false or defamatory." (Id.) Read together then, Plaintiff may post, publish, or discuss truthful statements about this case on social media or with the "press or general media[,]" but she is restricted from making "false or defamatory" statements about Defendants or otherwise discussing this case on those platforms. The Publicity Provision therefore does not unduly restrict Plaintiff's ability to discuss the Agreement or the case, and the "provision is the result of fair bargaining between well-represented parties and embodies a reasonable compromise that does not conflict with the FLSA's purpose of protecting against employer abuses." Lola, 2016 WL 922223, at *2 (reasoning too that "it is by no means irrational or improper for Plaintiff[] to compromise words for dollars as part of a global, arms-length settlement").

The absence of objectionable provisions supports the finding that the Agreement is fair and reasonable.

### 5. Attorneys' Fees and Costs

The Agreement allocates $19,981.58 to Plaintiff's counsel for attorneys' fees and costs. (ECF No. 58-1 at 2 ¶ 1(A)(i)). Of this amount, Plaintiff requests $4,148.25 in reimbursable expenses, including mediation costs and filing fees, among others. (ECF No. 58 at 7). Thus, the

---

Google+, YouTube, or any other similar website or mobile device application." (ECF No. 58-1 at 5).

proposed amount of attorneys' fees, $15,833.33 ($19,981.58 - $4,148.25), represents 33.3% of the Settlement Amount, consistent with Plaintiff's retainer agreement with her counsel. (See id. at 7). Plaintiff's counsel represents that the lodestar calculation is $84,432.50, representing 408.50 hours of work by the law firm's managing partner at a rate of $500.00 per hour, a partner who supervised associate work at $450.00 per hour, a senior associate at $250.00 per hour, other associates at $200.00, and law clerks and paralegals at $90 per hour. (ECF Nos. 58 at 7–8; 58-3).

"Where, as here, the proposed attorney's fees award is based on an amount other than the charged fees, the Court must still employ the lodestar method to determine reasonableness." Amhaz, 2019 WL 9122944, at *3 (citing Hernandez v. Boucherie LLC, No. 18 Civ. 7887 (VEC), 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019)); but see Puerto v. Happy Life Home Health Agency Inc., No. 23 Civ. 4915 (GWG), 2023 WL 8258103, at *2–3 (S.D.N.Y. Nov. 29, 2023) (declining to conduct lodestar check where one-third contingency fee arrangement was reasonable). "The lodestar method compares the proposed fees with the lodestar amount, [which is] a reasonable hourly rate multiplied by the reasonable number of hours needed to be spent on the case." Amhaz, 2019 WL 9122944, at *3.

"In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour." Burns v. Scott, 635 F. Supp. 3d 258, 284 (S.D.N.Y. 2022) (reducing experienced associate's hourly rate from $375 to $300), reconsideration denied, No. 20 Civ. 10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022); see Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting hourly rates between $250 and $450 for experienced litigators in wage-and-hour cases in this district); Victor v. Sam's Deli Grocery Corp., No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *15 (S.D.N.Y. Aug. 25, 2022)

9

(finding $350 reasonable hourly rate for associate with over seven years of wage-and-hour experience).

Plaintiff's counsel recorded 408.50 hours in this matter, at rates that varied by level of experience, resulting in a lodestar amount of $84,432.50. (ECF Nos. 58 at 7–8; 58-3). The fees awarded under the Agreement amount to less than one-quarter of the lodestar amount ($15,833.33/$84,432.50). The Court agrees with the conclusion of several district courts within the Second Circuit that counsel's hourly rates, ranging from $90 to $500, are reasonable, see, e.g., Shaw v. ProCore, LLC, No. 21 Civ. 3883 (AT), 2023 WL 5048236, at *3 (S.D.N.Y. July 3, 2023); (see ECF No. 58 at 8 (listing additional cases)). Furthermore, counsel for Plaintiff's expenditure of approximately 408.50 hours was efficient and reasonable. See, e.g., Glover v. Triumph Construction Corp., No. 18 Civ. 6763 (CLP), 2021 WL 7906504, at *4 (E.D.N.Y July 12, 2021) (concluding attorneys' fees of $53,333, representing one-third of the FLSA settlement, for 400 hours of work was reasonable, and stating the hours-to-fees ratio made "the requested fee fairly modest relative to the hours worked").

In addition, as noted above, the amount Plaintiff's counsel will receive under the Agreement reflects one-third of the total settlement, consistent with the retainer agreement. A one-third fee is generally deemed reasonable in this District. See Puerto, 2023 WL 8258103, at *3 (finding one-third contingency fee reasonable); Amhaz, 2019 WL 9122944, at *4 (finding that fees representing 32% of the net settlement amount were reasonable); Martinez, 2016 WL 206474, at *2 ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action."). The Court finds that there is no evidence of fraud or overreaching with respect to

the retainer agreement between Plaintiff and her counsel.  See Puerto, 2023 WL 8258103, at *3 (noting that contingency fee arrangement that was "the product of fraud, deception, or overreaching" would not be reasonable).

Finally, in response to the Court's requests, Plaintiff submitted receipts for the costs incurred in this action, totaling $4,148.25.  (ECF No. 65).  Plaintiff's costs reflect the "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); see Perez v. Rossy's Bakery & Coffee Shop, Inc., No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *11 (S.D.N.Y. Mar. 30, 2021) (awarding costs for transcripts, service, translator, and filing fee); see also Antonio v. SipSak Inc., No. 21 Civ. 1871 (LGS) (SLC), 2022 WL 4796956, at *15 (S.D.N.Y. July 28, 2022) (recommending award of costs for filing fee and service costs), adopted by, 2022 WL 4787739 (S.D.N.Y. Oct. 3, 2022); Amhaz, 2019 WL 9122944, at *4 (finding costs reasonable after plaintiffs' counsel supplemented submission with declaration attesting to costs).

Accordingly, the attorneys' fees and costs under the Agreement are reasonable.

## IV. CONCLUSION

For these reasons, the Motion is **GRANTED**, and the Agreement is approved as fair and reasonable.  The Clerk of Court is respectfully directed to close ECF No. 57.

Dated:     New York, New York
           September 25, 2024

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**